[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#107)
Defendant Worldcom, Inc. has moved strike counts two, three and five of the plaintiff Diane Dolak's complaint. For the reasons stated below, the motion is denied as to the second and fifth counts. It is granted as to the third count.
The plaintiff alleges the following: The plaintiff worked as a salesperson for Worldcom, Inc. and its predecessor, MCI Communications, Inc., until June 1999. In 1998, she worked in the investment globalaccounts division where she dealt with investment global accounts and earned commissions pursuant to a plan called the IGAM plan. Commissions under this plan were based on increases in revenue attributable to a salesperson's success. In January of 1999, the plaintiff was transferred by the defendant from the investment global accounts organization to theglobal accounts organization. Her title, accounts, and responsibilities remained the same.
One of the plaintiff's accounts was Avon Products, Inc. In early 1998, the plaintiff commenced negotiations with Avon's representatives. In January of 1999, she obtained an oral agreement from Avon to purchase approximately $23 million in telecommunication services from the defendant over the next three and a half years. At the time the plaintiff obtained the oral agreement from Avon, she was aware that other sales persons were being compensated under an IGAM plan as to some of their accounts and under another compensation plan as to other accounts.
The defendant's practice had been to assign corporate customers for which the defendant was not the primary carrier to the investment global accounts organization and to assign customers for which the defendant was the primary carrier to the global accounts organization. The defendant was not Avon's primary carrier. Therefore, the plaintiff believed that, her transfer to the global accounts organization notwithstanding, the defendant would not convert the Avon account from an investment global account to a global account.
As of February, 1999, the defendant's sales director was aware of the plaintiff's oral agreement with Avon. On March 15, 1999, the plaintiff sought confirmation that she was still being compensated pursuant to the 1998 IGAM commission plan. In March of 1999, the plaintiff completed negotiating the contract. On April 1, 1999, the defendant issued a new IGAM compensation plan and, in addition, issued a compensation plan called the GAM plan for sales representatives who handled global and corporate national accounts. Each plan was made retroactive to January 1999.
The plaintiff, although she signed the 1999 GAM plan, did not believe that it applied to the Avon account. On April 15, 1999, the defendant's CT Page 16363 sales manager informed her that the Avon account would be considered a global account, rather than an investment global account, and that she would be compensated under the 1999 GAM account plan. On April 30, 1999, the defendant and Avon signed a contract for telecommunication services. On May 6, 1999, the defendant told the plaintiff that she would not be compensated pursuant to the IGAM plan.
Commissions under the GAM plan were based on revenue quotas assigned to each account rather than the amount of growth in revenue for that account from the previous year. Thus, a commission for the Avon contract paid under the 1999 GAM plan would be substantially less than a commission paid under 1998 IGAM plan.
In the first count, which is not a subject of the motion to strike, the plaintiff alleges that the defendant's refusal to pay her a commission in accordance with the IGAM plan constituted a breach of an express contract. In the second count, the plaintiff alleges that certain statements, actions and conduct of the defendant created an implied-in-fact contract between the parties and that, pursuant to such implied contract, she is entitled to payment for her origination of the Avon commitment pursuant to the terms of the IGAM plan. In the third count, the plaintiff alleges that a covenant of good faith and fair dealing is implied in the IGAM plan and that the defendant breached this covenant by refusing to compensate her for the Avon sale pursuant to the IGAM plan. In the fourth count, which is not a subject of the motion to strike, the plaintiff alleges that the defendant has failed to pay wages as required by New York McKinney's Labor Law § 190. In the fifth count, the plaintiff alleges that as a result of her efforts and services the defendant has been unjustly enriched at the plaintiff's expense, that the defendant should not be allowed to retain those benefits, and that the defendant should be required to make restitution to the plaintiff in an amount commensurate with the benefit she conferred upon the defendant.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael., Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, supra, 244 Conn. 271. "[W]hat is necessarily implied [in an allegation] need not be expressly CT Page 16364 alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citation omitted; internal quotation marks omitted.) Gazov. Stamford, supra, 255 Conn. 260.
The defendant claims that the court should strike the second count for two reasons. First, Worldcom argues that New York law[1] does not recognize a cause of action based upon an implied contract in an employment at-will context and that by alleging such a cause of action the plaintiff is trying to circumvent Worldcom's right to prospectively alter terms and conditions of employment in an at-will employment relationship. Second, Worldcom argues that recovery on an implied contract theory is precluded where the existence of an express contract is alleged. The plaintiff, on the other hand, contends that where an implied obligation is not inconsistent with the unfettered right to terminate an at-will employee, an implied obligation may be enforced. This court concludes that an obligation to pay sales commissions for services already performed is not inconsistent with the unfettered right to terminate an at-will employee. See Knudson v. Quebecor Printing(U.S.A.), Inc., 792 F. Sup. 234, 237 (S.D.N.Y. 1992) (New York law permits courts to imply contracts from compensation plans). This court also concludes that the plaintiff has properly plead causes of action in the alternative. Practice Book § 10-25; Dreier v. Upjohn Co.,196 Conn. 242, 245, 492 A.2d 164 (1985). The motion to strike the second count is denied.
Worldcom claims that the court should strike the third count "because an implied covenant of good faith and fair dealing does not exist in at-will employment relationships under New York law, except in limited circumstances not present or alleged in this case." (Defendant's Brief, dated 6/14/01). The plaintiff, on the other hand, relies on the proposition that a covenant of good faith is implied whenever it is necessary to do so to enable one party to receive the benefits promised for performance.
Under New York law, "a covenant of good faith can be implied only where the implied term is consistent with other mutually agreed upon terms in the contract. . . . [T]he implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." Sabetay v. Sterling Drug, 69 N.Y.2d 329,514 N.Y.S.2d 209 (1987). The good faith doctrine limits the exercise of discretionary powers that one party to a contract posses under the terms of a contract. Here, the plaintiff does not allege the good faith obligation "in aid and in furtherance of other terms of the agreement of CT Page 16365 the parties." Rather, she alleges the obligation to create a term that otherwise would not exist, i.e. an agreement to compensation her for the Avon sale under the IGAM compensation plan. The defendant's motion to strike this count is granted.
Finally, the defendant argues that the court should strike the fifth count because, where there is an express contract, no recovery may be had on a theory of quantum meruit. The plaintiff has, however, plead this claim as an alternative theory of recovery. Where an employer refuses to pay sales commissions due and owing to an employee as a result of her own efforts, the employee may, under New York, law bring a quantum meruit claim. See Knudsen v. Quebecor Printing (U.S.A.), Inc., supra,792 F. Sup. 237. Accordingly, the motion to strike the fifth count is denied.
For the foregoing reasons, the defendants' motion to strike the second and fifth counts of the complaint is denied. The motion to strike the third count is granted.
THIM, J.